BUCK & SPENCER, plaintiffs in error, *vs.* JAMES D. COLLINS, clerk, defendant in error.

A private citizen has not a right, against the consent of the clerk of the superior Court and without the payment of his fees, to examine the books of record in his office, for the purpose of making a full abstract of the contents thereof, for publication.

Injunction. Officers. Clerk of the Superior Court. Before Judge HOPKINS. Fulton county. At Chambers. March 28th, 1874.

Buck & Spencer filed their bill against James D. Collins, making, in brief, the following case:

They have associated themselves in business for the purpose of making full abstracts of the title to the various parcels of real estate situated in the county of Fulton, embracing the city of Atlanta, for the use of the public, and for the private benefit of complainants. In pursuance of this enterprise they employed one E. D. Atwater to commence the preparation of said abstracts, at the compensation of $100 00 per month. The principal source of information for executing and perfecting the said enterprise consists of the records of deeds, mortgages, etc., contained in the clerk's office of the superior court of said county, and in the possession and control of the defendant, who is the clerk of said court. An inspection of said records can be made by complainants' agent without interfering with the duties or rights of said defendant or any other person, and without damage to the books, save that resulting from ordinary use. Recently, within office hours, on a day other than a Sunday or holiday, complainants went into said clerk's office and commenced inspecting the records for the purpose aforesaid, when they were directed by the defendant to desist, and he refused to allow them the use of the books. At other times since, complainants have requested said defendant to allow said inspection to proceed, offering to pay to him all lawful fees, if there were any, to which he might be entitled by reason of such use of the books, but he has invariably refused.

Pray that the said defendant, clerk as aforesaid, may, by the writ of injunction, be restrained from obstructing complainants or their agents, from inspecting the records aforesaid during office hours, and on business days, and for general relief.

The defendant, by his answer, denies that said records can be searched and overhauled, day after day, without interfering with the rights and duties of defendant, and without infringing on the rights of any other person, and without any injury to the books save that resulting from ordinary use. Denies that the inspection authorized by law is such as is pursued by complainants or their agent, or that it will suffice to give to complainants the information which they need in the preparation of correct abstracts of title. Asserts that while he does not gainsay that complainants are able to make all such inspections as they may need without the aid of the defendant, yet he does deny their right to make extracts from said records, or even to inspect the same, without paying to him twenty-five cents for each inspection. He insists that the right to inspect does not carry with it the right to make extracts, and he charges that this is precisely what complainants' agent was doing. He asserts that the making of extracts is an exclusive privilege appertaining to his office, for which the law allows him compensation at the rate of ten cents per hundred words, and that the complainants were wrongfully depriving him of this perquisite. Denies that complainants offered to pay the fees, and says that whilst he was, and still is, willing to permit such inspection upon the payment thereof, yet the public records should not be subjected to the wear and tear of a long and continuous ransacking, simply to afford to complainants the opportunity to carry out a private enterprise. Says that even if his fees had been tendered to him, which they were not, he would have had the right to object to the use sought to be made of said records, for the reason that the law requires that he "shall keep all books, papers, dockets and records, belonging to his office with care and security," and it would be impossible for him to comply with the terms

Buck & Spencer *vs.* Collins.

of this statute, should complainants be permitted to pursue the course heretofore referred to.

Previous to the hearing of the application for injunction, it was agreed between the parties litigant, that all objections to the form of the remedy adopted by complainant, be waived, and that the chancellor decide upon the merits of the controversy.

The injunction was refused and complainants excepted.

E. N. BROYLES, for plaintiffs in error.

CANDLER & THOMSON, for defendant.

McCAY, Judge.

The complainant claims to have the legal right to go into the office of the clerk of the superior court, (who is also the recorder of deeds and mortgages,) and make from the books an abstract of them; and as he does not need any aid of the clerk in making this abstract he insists that he is entitled to do it without the payment of any fees. This right is claimed not only on general principles, but it is said exists by positive law. Section 14 of the Code declares that all books kept by any public officer shall be subject to the inspection of all citizens of this state, within office hours, every day except Sunday. The fee bill, Code, section 3695, provides fees for inspection and abstract as follows:

For each inspection, when the clerk's aid is required, twenty-five cents; for examination of books and abstract of result, $1 00.

Under these laws, the complainant insists that he has a right to go into the clerk's office, during office hours, from day to day and from month to month, at his pleasure, copy from the books, when they are not in use, at his option, and thus collect material for a book which he proposes to publish for sale. As he is able, by employing an expert, to do this inspection and compilation himself, without the assistance of the clerk, he insists that no fee is required, and as the clerk

refuses to permit him to go on with his enterprise, except upon the payment of a fee for each separate investigation of a title, he prays that the clerk may be enjoined. We agree with Judge Hopkins. We think the complainant has no such right as he insists upon.

In the first place, we doubt if the avowed object of the complainant is not a perversion of the purpose for which the books are kept. The necessities of society and the protection of those dealing with property, require that these records shall exist. That the title to land, the fact that mortgages or judgments exist, shall be capable of being inquired into by those interested. This is, as we have said, a necessity of society, and this necessity begets the necessity for books and records. The character of one's title, and whether one has mortgages or judgments against him, is thus of *necessity* open to inquiry, and the public, by providing books and records, meets this necessity. Men are required, for the protection of purchasers and to secure fair dealing, to put their titles upon record, and to expose, in some respects, what they may have strong inducements to keep secret. But while the public interest thus provides a mode by which any one may learn the truth upon *inquiry*, it is no part of the public scheme to make this exposure universal. It provides that those who seek the information can get it, but it does not and ought not to flaunt the information its records contain before the public gaze, and thus make a scandal of a public necessity. The object of the record is to furnish to those *needing* it the information the record contains. That object is attained when its books are open to inquiries as these occasions present themselves. The object sought by the complainant, to-wit: to put the substance of these records into print, to be sold and put in the hands of any one who may chance to buy or to borrow, is an extension of this publicity beyond the necessities which make the record justifiable, and is a perversion of the object sought by the requirement to record. It is an unnecessary flaunting of private matters before the public gaze.

But again, the claim of the complainant to inspect and

make abstracts of· the clerk's books without the payment of fees, as he proposes to do, is not fairly within that part of the fee bill, which, by implication, permits any citizen to make an inspection without fee if he does not require the clerk's aid: Code, section 3695.    All laws are to be reasonably construed in view of the object of them, and in view of other laws.    The object of this permission to *inspect*, without fee, if no *aid* is required from the clerk, is plain.    It is contemplated that lawyers, public officers and persons familiar with the books, by having frequent occasion to use them, may not need the clerk's assistance for the purpose.    And, by implication, this permission contemplates that the clerk shall in such cases make no charge for simply standing by and noticing that no improper interference with the record is had.    But there is nothing in this implication (and that is all it is at best) which authorizes the clerk to permit even an inspection except in his own presence, or in the presence of his sworn deputy. He is required, section 267, Code, to "keep all books, papers and dockets belonging. to his office with care and security." He *cannot* do this if any person may handle or inspect them otherwise than· under his own eye.    In our judgment any clerk would be guilty of a failure in his official duties should he permit any person, if only for a minute, though he might be familiar with the books, and be able to examine them without the clerk's aid, to have the custody of the books and papers of his office.    The clerk cannot charge a fee for a mere inspection, where his aid is not required.    But no person has a right to examine or inspect the records of his office, except in his, the clerk's, presence and under his observation.    If he may do this for a minute, the clerk is not "keeping them safely and securely."    A blot or a scratch may be made in a minute that may alter a record; a leaf may be abstracted in a minute, and if one man may of right take a record book and "abstract" its contents—work a week upon it, any other man may do it.    If a good, honest man has a right to do this, a bad man has the same right; and if this may be done, except under the clerk's immediate inspection, no record can

be kept safely. If the complainant has the right to do what he claims, he has the right to keep the clerk's attention from minute to minute, and from day to day, until his book is finished. He has the right to the services of the public officer for months together without pay; for, not only the law but every principle of propriety requires that no person shall inspect the books, except under the watchful observation of the clerk.

It is a perversion of the right of inspection, evidently intended to provide for examinations from time to time, as the ordinary occasions and business of men may require, to make a business of it. The law might well, in view of the ordinary wants of the people, permit an inspection of the books, when no aid is required from the clerk, without a fee. It is but a slight hindrance to him in his duties to keep his eye on the few citizens who visit his office for such purposes, and if he has only to stand by as a sentinel to prevent fraud or spoliation, for a minute or two, it is but a small matter, and may well be without a fee. But the law never contemplated that any one would make a business of it; spend days and weeks in the office, engaged in an occupation which, in our judgment, cannot lawfully be carried on except under the immediate observation of the clerk. Fees are given for *each* inspection, *each* abstract. The law has in view the inspection of one chain of title—the *status* of one man—and fixes a fee for that. If the inspection of the book does not require the aid of the clerk, he can demand no fee, but it is still his duty to inspect the inspector. In our judgment the rights claimed by the complainant thus to occupy the attention of a public officer, perhaps for weeks together, without fee or reward, is a perversion of the letter of the law, intended for one purpose, to another and different purpose not contemplated by the lawmakers, and contrary to their intent. It stands exactly on the footing of the misconstruction mentioned by Blackstone, when it was concluded that because it was unlawful to draw blood in the streets, a surgeon was a law-breaker who bled a man found helpless therein. If some one familiar with the

clerk's office, say an old clerk or a lawyer, whose business required him often to examine the books, were to make a business of it, and sitting at the clerk's door solicit every inquirer to give him the job, he would be no more a perverter of the law and infringer on the rights of the clerk than this complainant proposes to be.

The avowed object of the complainant is to furnish to the public the contents of the books and papers of the clerk's office for his own profit.   He proposes to say to the public, if you desire to inquire into a title or into the incumbrances upon an estate, or into the judgments against a citizen, you need not visit the clerk's office, you need not pay him any fees.   Here is my book—it is all there; you can get what you want without fees.

Our law gives the clerk no special fees for keeping safely the books, etc.; the pay he gets for this service—this duty— to be always on hand watching his books and keeping them ready of access, is the fees which, in the ordinary course of business, he will receive for inspections, abstracts, etc.   The scheme of the complainant strikes at the very root of this lawful perquisite of the clerk and takes away from him those fees which the law contemplates he will receive for the performance of a duty cast upon him.

Upon the whole, therefore, we think the judge was right in refusing the injunction.   The plaintiff's whole scheme is of doubtful propriety, proposing, as it does, to make unnecessarily public men's private affairs, which the law, for the purposes of fairness, requires them to put upon record where citizens may, as their necessities require, examine.   It proposes to use a privilege, intended only for special cases, in such a way as to put an onerous and exacting duty upon the clerk without remuneration, and to take away from him, as far as it is possible for the scheme to do it, the lawful perquisites of his office.

Judgment affirmed.