HANSON, Appellant, vs. EICHSTAEDT, Respondent.

*October 12 — November 1, 1887.*

REGISTRY OF DEEDS. *Right to make private notes, copies, etc., for ab-*
*'stract books.*

Under our statute (sec. 700, R. S.), any person desiring to do so is entitled to enter the office of the register of deeds during the usual hours of business, in a proper manner, and by paying fees when allowed, and under the reasonable supervision and control of the register, to examine and take minutes, notes and copies of books, records and instruments therein, for use in making private abstract books. The right is not limited to lands in which such person or his clients are pecuniarily interested.

APPEAL from the Circuit Court for *Green Lake* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The complaint, verified February 4, 1887, alleged, in effect, that the plaintiff was elected and qualified as register of deeds of Waushara county; that as such he occupied the office of register of deeds at Wautoma, provided by the county; that, December 1, 1886, the defendant, without his consent, took and continued to hold possession of said office, and occupied a table, and books and records therein, and belonging thereto, and threatened to continue to do so, and would unless restrained; that by so doing the defendant seriously interfered with the plaintiff's performance of

his official duties; that the defendant uses such books to sit down upon, thereby excluding the plaintiff and the public therefrom; that in doing the things stated, the defendant pretends that he is preparing an abstract of titles to lands in said county from the records thereof, for his own use; that such use of said records is not in the usual way for taking notes, but to the exclusion of the plaintiff and the public; that said office is a rather small room, only large enough for the plaintiff and the public, and that the defendant's occupancy constitutes a nuisance; that the defendant utterly refuses to desist, though often requested; that the plaintiff has offered the defendant the reasonable use of such books, records, and office in the usual way, but he refuses such use, and persists in using as set forth; wherefore, he prays an injunction, etc. Upon that complaint, February 11, 1887, the defendant was temporarily restrained from doing the acts mentioned, during the pendency of the action, or until the further order of the court.

The verified answer of the defendant denied each and every allegation, and each and every matter and thing contained in the complaint, except as therein expressly admitted and qualified, and as hereinafter, in effect, stated. Upon that answer, and two affidavits verified March 12 and 14, 1887, the defendant moved the court, March 18, 1887, for a dissolution of said injunction. From said answer and affidavits, and two affidavits verified March 16 and 19, 1887, used in opposition to said motion, it appears, in effect, that the defendant was a lawyer residing at Berlin; that, being desirous of preparing an abstract of the title to lands in the eastern portion of Waushara county for the purpose of opening and keeping an abstract office at Berlin, he went to the register's office in the custody of the plaintiff, about December 1, 1886, and took notes, minutes, and copies from the books and records therein, with the consent or acquiescence of the plaintiff, from day to day, until December 11,

1886, when the plaintiff informed him that he had no right to use such books and records for the purpose of making such abstract, and then forbade him the further use of the same; that, December 20, 1886, the defendant made a formal demand for the use of such books and records for the purpose aforesaid; that the plaintiff then gave him access to said books and records until December 25, 1886; that, about February 3, 1887, the plaintiff renewed his work of taking such notes, minutes, and copies, and the plaintiff furnished the same, but insisted that the defendant had no right thereto, and that he should stop him whenever he got ready to do so; that he did not want the defendant there for that purpose, as he was in the way; that the defendant claimed the right to be there for the purpose named; that the plaintiff acquiesced in his being there, and his continuing such work, until February 11, 1887, when the summons, complaint, and injunctional order were served upon him; that the defendant never at any time interfered with, or in any way obstructed, the plaintiff in the performance of his duties as such register, nor with the current business of the office, nor the business of the public with said office; that defendant at all times surrendered and gave up any books whenever requested by the plaintiff, and obeyed every request and direction of the plaintiff.

Upon the hearing of the motion, and upon March 23, 1887, the court ordered that said injunctional order be, and the same was thereby dissolved, vacated, and set aside. From that order the plaintiff brings this appeal.

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*. They contended, among other things, that the words "any person" in sec. 700, R. S., must be limited to one who has a pecuniary interest in the record to be inspected. *Webber v. Townley*, 43 Mich. 534; *Brewer v. Watson*, 71 Ala. 299; *Bean v. People*, 7 Col. 200; *Randolph v. State*, 82 Ala. 527. To

Hanson vs. Eichstaedt.

allow any person to go into the register's office and make copies, etc., for abstracts would seriously interfere with the income of the register. His occupancy of the office would also seriously incommode the public, and interfere with the register's discharge of his official duties.

*G. D. Waring*, for the respondent.

CASSODAY, J. It is urged by counsel for the plaintiff that it was an abuse of discretion to dissolve the preliminary injunction. He contends that the right to inspect and copy public records is confined to those having some interest in the particular record sought to be inspected or copied, and does not extend to one seeking to do so from mere curiosity, or for his own private gain. Such seems to be substantially the rule at common law. 1 Greenl. Ev. §§ 473–475. It is claimed that the same rule should be applied under our statutes. In support of such contention counsel rely upon *Buck v. Collins*, 51 Ga. 391; *Bean v. People ex rel. Uppercer*, 7 Col. 200; *Brewer v. Watson*, 71 Ala. 299; *Randolph v. State*, 82 Ala. 527; *Webber v. Townley*, 43 Mich. 534. To fully appreciate the significance of these decisions, as authority here, it becomes necessary to carefully note the statutes, and circumstances under which they were respectively made, as compared with those here involved.

In the Georgia case, the complainant insisted upon the right to make abstracts from books of records "without the payment of any fees" under statutes, which, as construed by the court, entitled the officer in charge of such records to exact fees. The court merely held that the complainant could not exercise such right without the payment of fees.

The Colorado case was under a statute requiring the recorder to keep his office "open during the usual business hours, . . . and that all books and papers required to be kept in his office shall be open for the *examination* of any person." But the statute of that state also made it

the duty of the several clerks and recorders " to make and furnish, upon application therefor, abstracts of deeds," etc., " to any person who shall make application therefor, and shall *pay or tender the fees* provided by law." Sub. 584, Gen. St. Colo. 268. That case was based upon statutes making such fees appurtenant to the office of the custodian of such records. Under such circumstances it was held that the recorder was "not compellable, by *mandamus,* to allow abstract makers to use his office and the county records for the purpose of *abstracting the entire records* of the land titles of the county for sale." To hold otherwise would have been, in effect, to hold that such recorder was compellable, by *mandamus,* to aid in building up a rival establishment which would necessarily reduce the emoluments of his office, and without any statute in terms requiring him to do so. By sec. 762, R. S. (ch. 353, Laws of 1864, and ch. 39, Laws of 1867), a register in this state was required to keep a tract index in such counties as had already kept one, and in such other counties as the board of supervisors thereof should thereafter order one to be kept. That section was subsequently amended so as to authorize the discontinuance of such index, and to keep and maintain, in place thereof, "a complete abstract of title to the real estate of such county." Ch. 149, Laws of 1881. But there is nothing in this record indicating that Waushara county had adopted either system; nor that it is the duty of the register thereof to make abstracts; much less that the fees for making abstracts are appurtenant to his office.

The earlier Alabama case cited was an action against the state auditor to recover damages alleged to have been suffered by reason of the refusal of such auditor to allow him access to, and inspection of, certain public records belonging to his office. The decision was placed upon the rule at common law; and there does not appear to have been any statute in the state purporting to give the right demanded.

The Michigan case cited was an application for a *mandamus* to compel the register of deeds to permit the relators to inspect, or copy, or abstract the public records in his office, subject to reasonable rules and regulations as to time, facilities, etc. The opinion of the court is devoted principally to the rule at common law, in such cases; and it was held that "there is no common-law right to make copies or abstracts of public records for speculative purposes, as for the compilation of a set of abstract books for selling abstracts of title." In reference to the statute in that state, the court said: "The language of the act referred to does not in clear and unmistakable terms include a case like the present, and such an one should not be conferred by construction. The object of the act was to enable persons having occasion to make *examination* of the records '*for any lawful purpose*,'—and what would be, we have already indicated,—to have suitable facilities therefor," etc. The words "for any lawful purpose" were taken from the statute, and were there manifestly construed to mean any lawful purpose as understood at common law. In *Diamond Match Co. v. Powers*, 51 Mich. 145, an application for a *mandamus* was made for substantially the same purpose as in the other case, and was denied on the ground that "the remedy by *mandamus* contemplates the necessity of indicating the precise thing to be done; it is not adapted to cases calling for continuous action, varying according to circumstances." In the opinion by GRAVES, C. J., no reference is made to the case in 43 Mich. 534, *supra*, although it was decided only three years before.

The recent Alabama case cited was an application for a *mandamus*, requiring the judge of probate to permit the examination and abstract of the records in his office, when not in use by him; and was made under a statute declaring that "the records of the judge of probate's office must be free for the *examination* of all persons, when not in use by him."

Sec. 698, Code Ala. 1876. The court, following the earlier case, and the Michigan case cited, held, in effect, that, notwithstanding the statute, "attorneys at law, who are engaged in loaning money, are not entitled to have access to the records for the purpose of making abstracts of all the titles to real estate in the county, to enable them in future transactions to furnish abstracts promptly as required."

In *People ex rel. G. L. & Q. Co. v. Richards*, 99 N. Y. 623, an application was made for a *mandamus* to compel the register of deeds to allow more than " three men," employed by the relator, to make abstracts in the office at the same time, under a statute which made the register " custodian of all the books and records in his office," and provided that such records shall " at all proper times be open for the inspection of any person paying the fees allowed by law; " and although the court were unable to hold that the *mandamus* was "improperly refused," yet the rule was declared thus: " These records are, therefore, public records which every person has the right to inspect, examine, and copy, at all reasonable times, in a proper way, and the register cannot deny access to his office or to the books, for such purposes, to any person coming there at a proper time, and in an orderly manner. But he must necessarily have control of his office and of the records, and must have some discretion to exercise as to the manner in which persons desiring to inspect, examine, and copy the records may exercise their rights. He must transact the current business of the office, and allow all persons reasonable facilities to exercise their rights in the office." That case was followed in a similar case, and under a similar statute in *People ex rel. Guaranty Co. v. Reilly*, 38 Hun, 433. See *Hawes v. White*, 66 Me. 305; *O'Hara v. King*, 52 Ill. 303.

The statute of this state declares that " every  .  .  . register of deeds  .  .  .  shall keep his office  .  .  .  open during the usual business hours of each day,  .  .  .  and

with proper care, shall open to the examination of *any person* all books and papers required to be kept in his office, and permit *any person* so examining to take notes and copies of such books, records, or papers, or minutes therefrom; and if any such officer shall neglect or refuse to comply with any of the provisions of this section, he shall forfeit five dollars for each day such non-compliance shall continue." Sec. 700, R. S. This language, literally construed, certainly includes the defendant. The words "any person," when so construed, are distributive, and include every person. By what authority, then, are we to construe these words as only applicable to a particular class of persons, as, for instance, those only who are interested in the particular piece of land, the record of which is sought to be inspected or copied? If so, how is the fact of such interest to be determined — by the applicant, or by the register? Is the register to accept, without question, the statement of the applicant, or may he require other evidence? Of course, every statute is to be construed with reference to its object and subject-matter; and in that way, it frequently occurs that general words are limited in their operation. Wilb. St. Laws 173–177. Here the subject-matter is the examination of the public books and records in the register's office, and the taking of notes, minutes, and copies therefrom; and the statute requires the register under a penalty, to "permit any person" to so examine and take notes, minutes, and copies. Under such a statute can we say that when a respectable person, in a respectful manner, applies to the register to make such examination, etc., he is to be excluded, merely because he does not belong to some class of persons unnamed and undefined in the statute; or if permission is given, is his examination, etc., to be confined to lands in which he or his clients have a present pecuniary interest?

As bearing upon the construction of language thus sweeping and imperative, we venture a few citations. In

*Sturges v. Crowninshield*, 4 Wheat. 204, MARSHALL, C. J., said: " It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of an instrument expressly provide shall be exempted from its operation. . . . If, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would without hesitation unite in rejecting the application." In *Gibbons v. Ogden*, 9 Wheat. 217, the same chief justice, speaking for the court, said: " If the power reside in congress, as a portion of the general grant to regulate commerce, then acts applying that power to *vessels generally* must be construed as comprehending *all vessels*. If *none* appear to be excluded by the language of the act, *none can be excluded by construction*." In the language of DIXON, C. J., in *Harrington v. Smith*, 28 Wis. 60: " General words in a statute must receive a general construction, unless there be something in it to restrain them, or, as it is otherwise frequently expressed, if there be *no* express exception." To the same effect, *Laughter v. Seela*, 59 Tex. 186. In *Everett v. Wells*, 2 Scott N. R. 531, TINDAL, C. J., said: " It is the duty of all courts to confine themselves to the words of the legislature, nothing adding thereto, nothing diminishing." Of course he referred to statutes in which the language was plain and unambiguous. In the same opinion, he said, in effect, we have no authority for "importing into the act a condition which we do not find there," Substantially the same language has been used by this court in the case above cited, and others. *Comstock v. Bechtel*, 63 Wis. 661.

Even the maxim that penal statutes are to be strictly construed " is not to be so applied as to narrow the words of

the statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the legislature had obviously used them, would comprehend." *U. S. v. Wiltberger*, 5 Wheat. 95; *In re Coy*, 31 Fed. Rep. 800, per HARLAN, J. In so far as the Alabama and Michigan courts may have indicated that a statute giving certain enumerated rights respecting records to "any person" is a mère confirmation of a rule at common law, giving similar rights to only a particular class of persons, we must decline to follow them. On the contrary, we must hold that our statute in question extends such right of examination, etc., to "any person," applying to such custodian of public records in a proper manner, subject, however, to the payment of fees when allowed, and such reasonable supervision and control by such officer as are essential to the convenient performance of his duties, and the current business of the public. It may be that some more definite regulations should be made in such matters, but that is a question for the legislature, and not for us.

*By the Court.*— The order of the circuit court is affirmed.

ORTON, J., dissents.

See note to this case in 35 N. W. Rep. 30.— REP.

