BOOTH *et al. v.* MITCHELL.

No. 10094. September 19, 1934.

*Herbert W. Wilson, Harry M. Wilson, B. G. Oberry Jr.,* and *R. A. Moore,* for plaintiffs.

*Wilson Bennett & Pedrick, Jerome & J. Lee Crawley, W. C. Parker,* and *Bennett & Bennett,* for defendant.

ATKINSON, J.   W. S. Booth and thirty-four others as citizens and taxpayers instituted mandamus proceedings to compel J. D. Mitchell to allow petitioners to examine the following records: "(a) Superior-court bar docket, both civil and criminal; subpœna dockets, both civil and criminal; superior-court cost record or records; sentence record or records and any or all other records kept in connection with the operation of the superior court of Ware County. (b) City-court bench or bar dockets, both civil and criminal; subpœna docket, both civil and criminal; cost record or records; sentence record or records, and any or all other records of said court relating to the disposition of civil or criminal causes in said court.

(c) All the records of the commissioners of roads and revenues in Ware County, Georgia, including cash-books, ledger, bank-books, deposit-register, register of tax deeds, register of tax fi. fas., bond register, register of deposits, deposit tickets, or slips, or duplicates thereof, audits or copies thereof, public notice of receipts and expenditures, or copies thereof, and any or all other record of such nature and kind relating to receipts and disbursements, bills receivable and bills payable to the County of Ware, in said State. (d) Records of all receipts and disbursements relating to the collection of funds for the erection of the Ware County Hospital, the distribution thereof, both for building and equipment, and for any and all other purposes, together with any and all other records incident to the financing, erection, and equipment of said hospital. (e) The deposit books of the defendant in his capacity of clerk of the superior court, clerk of the city court of Waycross, clerk of the Ware County Hospital board, and as an ex-officio member of the board of commissioners of roads and revenues of Ware County, Georgia, together with all checks and vouchers, statements and receipts affecting the receipts and disbursements by said commission for the years 1928 to 1932, inclusive. (f) The minutes of all meetings during the years 1928 to 1932, inclusive, of the board of commissioners of roads and revenues of Ware County, Georgia. (g) The minutes of all meetings of the Ware County Hospital board from the date of its creation to the 1st day of January, 1933."

It was alleged in the petition that the defendant is the clerk of the superior court of Ware County, is clerk of the city court of Waycross, is clerk and an ex-officio member of the board of commissioners of roads and revenues of the county and custodian of its records, is a member of the Ware County Hospital board, a county owned institution, and its clerk and treasurer, and is the disbursing agent for all funds expended during the construction of the Ware County Hospital; that it is the duty of defendant acting in the capacities enumerated to keep a complete record of receipts and disbursements from all sources, together with vouchers, to deposit the funds received in the duly designated depository for the several departments, and to disburse same by properly drawn checks; that records so made are essentially public, intended to charge constructive notice, and to afford citizens an opportunity to have facts such records disclose; defendant is a public officer in

each of the several capacities in which he serves, and the books, records, and documents kept by him are subject to inspection by any or all the citizens of this State within office hours on each and every day except Sunday and holidays, and it is the official duty of defendant, in which he has no discretion, to permit examination of such records when request therefor is made during such hours; that in January, 1933, and on subsequent occasions petitioners called upon defendant for permission to examine all the records of the city court of Waycross; that the nature and character of examination sought was not such as would require the assistance of defendant, and no fee would have been required; that nevertheless the defendant refused to permit an examination of any of the records; that on January 17, 1933, petitioners requested the right to examine all of the records of the county commissioners that were in defendant's custody, which request was denied; that on March 21, 1933, petitioners called upon defendant and the members of the board of commissioners and renewed their request, whereupon defendant acting for the board refused to permit the examination and advised petitioners that such examination would not be permitted; that petitioners requested and were permitted to examine the accounts of the Ware County Hospital board in so far as disbursements for the year 1932 were concerned, but were refused to examine them in so far as receipts for the same year or any other period were concerned; that petitioners requested permission to examine the bank records kept in the office of defendant, touching the affairs of the superior court, the city court of Waycross, the board of commissioners and the hospital board, which permission was denied; that it is not desired to examine all the records at one time but only such as can be examined conveniently in the presence of defendant; that the requests to examine the above-stated records were not made from curiosity, or with a view of private gain, but in order that petitioners as citizens and taxpayers might be informed of the condition of the affairs of the superior court, of the city court of Waycross, of the financial condition of the county as administered by the board of commissioners, and of the condition of the Ware County Hospital, maintained by county taxation, in all of which they have a direct tangible interest as citizens and taxpayers, and the refusal to permit the examinations was not in good faith, but was an effort of defendant to conceal the

true facts relative to the condition of the county as relates to its fiscal affairs; that petitioners are willing to pay the customary fees in connection with any examination they might desire to make, in which the services of defendant would be required; and that it is not desired that the right to examine records shall extend over a long period of time, but only so long as is necessary to make an examination of the records.

The defendant interposed a demurrer on the grounds: (a) The allegations of the petition show no cause of action against the defendant. (b) The petition sets out no fact or allegation which would entitle the petitioners to the relief prayed for. (c) The petition does not anywhere set out any authority or power in petitioners to entitle them to the relief sought. The petitioners excepted to a judgment sustaining the demurrer and dismissing the petition.

It is declared by statute: "All books kept by any public officer under the laws of this State shall be subject to the inspection of all the citizens of this State, within office hours, every day except Sundays and holidays." Civil Code, § 14. "Except as provided in §§ 416, 417, and 418 of the Civil Code, in addition to the duties of the grand jury as indicated in the oath administered to them, and as required by law, it shall be their special duty, from term to term of the superior court, to inspect and examine the offices, papers, books, and records of the clerks of the superior courts, . . and cause any such clerk, . . who shall have failed or neglected to do his duty as required by law, to be presented for non-performance of official duty. And in making up their general presentments, they shall take proper notice of the matters brought to their attention by the report and books of the county school commissioners." Penal Code, § 840. "The grand jury may, when they deem it necessary, appoint any one or more citizens of the county, to inspect and examine, during vacation, the offices, papers, books, records, accounts, and vouchers of the . . clerk of the superior court, . . and all other county officers; and if any of said officers be the custodians of county funds by virtue of their office, or have in their possession funds belonging to the county, they shall exhibit them to said committee, and it shall be the duty of the committee to count the same, and to make a full and complete report of the finances, disbursements, and conditions of the several offices

to the grand jury at the succeeding term of the superior court; and should any of said officers fail or refuse to exhibit to the committee the funds on hand or claimed by them to be on hand, upon notice of that fact to the judge of the superior court by the committee it shall be his duty to compel the delivery of the funds to the committee for the purpose of counting the same, by mandamus or attachment." Penal Code, § 841. Referring to clerks of the superior court, it is also declared: "Their offices are subject to an examination by the grand juries, their committees, or any person whom they may specially empower to report to the same, or a succeeding grand jury, or to the judge of the superior court, who shall submit in writing the condition of said offices, and specify any neglect of duty, or anything done wrongly or corruptly by such clerk." Civil Code, § 4898. This power of examination by grand juries was recognized and applied in *Chatham County* v. *Gaudry,* 120 *Ga.* 121 (47 S. E. 634), and *Watkins* v. *Tift,* 177 *Ga.* 640 (170 S. E. 918). The case of *Buck* v. *Collins,* 51 *Ga.* 391 (21 Am. R. 236), had reference to construction and application of the Civil Code, § 14, supra, and involved the powers of the clerk of the superior court in regard to inspection of records in his office. It was held: "A private citizen has not a right, against the consent of the clerk of the superior court and without the payment of his fees, to examine the books of record in his office, for the purpose of making a full abstract of the contents thereof, for publication." In the opinion it was said by Judge McCay: "The necessities of society and the protection of those dealing with property require that these records shall exist. That the title to land, the fact that mortgages or judgments exist, shall be capable of being inquired into by those interested. This is, as we have said, a necessity of society, and this necessity begets the necessity for books and records. The character of one's title, and whether one has mortgages or judgments against him, is thus of necessity open to inquiry, and the public, by providing books and records, meets this necessity. Men are required, for the protection of purchasers and to secure fair dealing, to put their titles upon record, and to expose, in some respects, what they may have strong inducements to keep secret. But while the public interest thus provides a mode by which any one may learn the truth upon inquiry, it is no part of the public scheme to make this exposure universal. It provides

that those who seek the information can get it, but it does not and ought not to flaunt the information its records contain before the public gaze, and thus make a scandal of a public necessity. The object of the record is to furnish to those needing it the information the record contains. That object is attained when its books are open to inquiries as these occasions present themselves. The object sought by the complainant, to wit, to put the substance of these records into print, to be sold and put in the hands of any one who may chance to buy or to borrow, is an extension of this publicity beyond the necessities which make the record justifiable, and is a perversion of the object sought by the requirement to record. It is an unnecessary flaunting of private matters before the public gaze." It was further said: "He is required [Code of 1910, § 4892, par. 10] to 'keep all books, papers, and dockets belonging to his office with care and security.' He can not do this if any person may handle or inspect them otherwise than under his own eye. In our judgment any clerk would be guilty of a failure in his official duties should be permit any person, if only for a minute, though he might be familiar with the books, and be able to examine them without the clerk's aid, to have the custody of the books and papers of his office. The clerk can not charge a fee for a mere inspection, where his aid is not required. But no person has a right to examine or inspect the records of his office, except in his, the clerk's, presence and under his observation. If he may do this for a minute, the clerk is not 'keeping them safely and securely.' A blot or a scratch may be made in a minute that may alter a record; a leaf may be abstracted in a minute, and if one man may of right take a record book and 'abstract' its contents—work a week upon it, any other man may do it. If a good, honest man has a right to do this, a bad man has the same right; and if this may be done, except under the clerk's immediate inspection, no record can be kept safely. If the complainant has the right to do what he claims, he has the right to keep the clerk's attention from minute to minute, and from day to day, until his book is finished." On request to review and overrule it, this decision was reaffirmed in *Land Title Warranty &c. Co.* v. *Tanner,* 99 *Ga.* 470 (2) (27 S. E. 727), this court holding: "Under the law as there laid down, an attorney at law has not—either in his own right, or in behalf of a corporation represented by him—the right, *against the consent of the clerk of*

*the superior court* and without paying his fees, to make copies of or abstracts from the books of record in his office for the purpose of compiling abstracts of titles to be used in a private abstract and land title business carried on by such attorney or corporation. The right to inspect public records, provided for in section 14 of the code, was not intended to embrace such a privilege." The principle of these decisions was recognized and applied in *Atlanta Title & Trust Co.* v. *Tidwell*, 173 *Ga.* 499 (5, 7) (160 S. E. 620, 80 A. L. R. 735), but a different result was reached because the clerk of the court in the exercise of his powers saw fit to allow examination of the books rather than refuse such examination as was done in the former cases. In the latter case it was held: "In the instant case the clerk of the superior court, exercising his discretion to permit the Atlanta Title and Trust Company to examine the original documents filed in his office for record and his books of record, and to make abstracts thereof, as alleged in the petition, acted within his authority as derived from the statutes." See also *Grizzard* v. *State Revenue Commission*, 177 *Ga.* 845 (171 S. E. 765). In the instant case the allegations of the petition show that the clerk of the court had a discretion to allow or refuse an examination and inspection of the records by the plaintiffs for the purposes and in the manner alleged in the petition, which will not be controlled by writ of mandamus. Consequently the petition failed to allege a cause of action and was properly dismissed on demurrer.          *Judgment affirmed. All the Justices concur.*